UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LORETTA TAYLOR, *et al.*,<br><br>               Plaintiffs,<br><br>    v.<br><br>WASHINGTON STATE DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>               Defendants. | Case No. C23-6186-MLP<br><br>ORDER |

## I.    INTRODUCTION

This matter is before the Court on Defendants Cheryl Strange, Todd Dowler (together, the "Individual Defendants"), and the Washington State Department of Corrections' ("DOC"; collectively, "Defendants") Motion to Dismiss. (Mot. (dkt. # 17).) Plaintiffs[1] filed an opposition (Resp. (dkt. # 19)), and Defendants filed a reply (Reply (dkt. # 20)). The Court heard oral

---

[1] Loretta Taylor, Annica Mizin, Brett Weaver, Brian Ford, Chris Leyendecker, Christopher Shelton, Connie Alvarez, Cori McGrady, Danielle Oyen, Donald Weaver, Dorothy McMillan, Forest Bailey, Frank Albert, Gerry Henderson, Gregory Brown, Gus Bornstein, James Erwick, Jason Rudolph, Jason Sansom, Jodie Oldham, Joe Daracunas, John Oyen, Jonathan Phillips, Julie Bornstein, Kamberly Warner, Kelly Luck, LaDonna Hebert, Lance Weaver, Lane Trussell, Leo Blakley, Leslie Grable, Logan Veersamy, Malory Atkins-Johnson, Mary Trussell, Michael Hisey, Nicolette Phillips, Niza Puckett, Richard Scholl, Scott Fleming, Sean McGrady, Shannon Travis, Shawn Ulrich, Shelly Larkin, Todd Dillmon, Toni Hoffman, Tracy Kessler Wyant, Travis Eilertson, William Wyant, and Yvonne Green.

ORDER - 1

argument on May 1, 2024. (Dkt. # 23.) Plaintiffs submitted a notice of supplemental authority on May 14, 2024. (Dkt. # 26.) Having considered the parties' submissions, oral argument, the governing law, and the balance of the record, the Court GRANTS in part and DENIES in part Defendants' Motion (dkt. # 17).[2]

## II.   BACKGROUND

Governor Jay Inslee issued Proclamation 21-14 (as amended, the "Proclamation") on August 9, 2021. (Compl. (dkt. # 1) at ¶ 78, Ex. B (dkt. # 1-2).) The Proclamation, which was amended multiple times, required state employees to become vaccinated against COVID-19 and directed state agencies to provide religious and medical accommodations as required by the Washington Law Against Discrimination ("WLAD"), Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act of 1990. (*Id.*, Ex. B at 5-6.) The Proclamation specifically noted that "State Agencies are not required to provide such accommodations if they would cause undue hardship." (*Id.* at 6.) The Proclamation was rescinded on October 28, 2022. *See* Proclamation 21-14.6.[3]

Plaintiffs are forty-nine[4] DOC employees who allege they were each "wrongfully denied accommodations and terminated for non-compliance with a new state requirement for COVID-19 vaccination[.]" (Compl. at ¶¶ 2, 12-60.) Some Plaintiffs sought religious exemptions, some

---

[2] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 11.)

[3] *Available at* https://governor.wa.gov/sites/default/files/proclamations/21-14.6%20-%20COVID%20Vaccination%20Requirement_Rescission_%28tmp%29.pdf (last visited May 14, 2024). The Court may consider "materials incorporated into the complaint by reference, and matters of judicial notice." *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011). "Incorporation by reference" doctrine allows for consideration of documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotations omitted). Plaintiffs incorporate by reference the Proclamation as amended, even though the Complaint attaches only two of the six amendments. (*See* Compl. at ¶ 78, Ex. B.)

[4] Plaintiffs state there are fifty of them but this is belied by their complaint. (Compl. at ¶¶ 2, 12-60.)

ORDER - 2

1  sought medical exemptions, and some sought both. (*Id.* at ¶¶ 12-60.) Thirty-nine Plaintiffs
2  received religious exemptions, four received medical exemptions, two received both religious
3  and medical exemptions,[5] three were denied religious exemptions, and one was denied both
4  exemptions. (*Id.*) Some Plaintiffs granted exemptions were provided temporary accommodations
5  or were temporarily reassigned. (*See, e.g., id.* at ¶¶ 12, 14, 20, 36, 41, 48, 53.) Plaintiffs allege
6  they were all terminated or forced to retire "on or about October 18, 2021."[6] (*Id.* at ¶¶ 12-60,
7  108.) At the time Plaintiffs were terminated, Ms. Strange was Secretary of the DOC and Mr.
8  Dowler was Director of Human Resources. (*Id.* at ¶¶ 10-11.)

9        On December 27, 2023, Plaintiffs filed the instant action. (Compl.) Plaintiffs allege
10  claims arising from the U.S. Constitution, federal law, Washington Constitution, and Washington
11  law. (*Id.* at ¶¶ 497-708.) They seek monetary damages, attorney's fees, and "[r]einstatement for
12  those Plaintiffs who desire to return to their previous positions." (Compl. at 168, ¶¶ 1-7.) The
13  Complaint does not identify which Plaintiffs, if any, seek reinstatement.

14                                        **III.   DISCUSSION**

15        On March 4, 2024, Defendants filed the instant motion to dismiss pursuant to Rule
16  12(b)(6). (Mot.) Defendants contend Plaintiffs have failed to state a claim on any of their federal
17  causes of action, the Court should decline to exercise supplemental jurisdiction over the State
18  claims, and the State claims fail as well. (*Id.* at 1-3.) Plaintiffs concede certain claims fail, but
19  contend the rest should stand. (Resp. at 13-15.)

---

[5] The response brief asserts six Plaintiffs received "both a religious and medical exemption[.]" (Resp. at 34 n.16.) This assertion is contradicted by the allegations in the Complaint. (*See* Compl. at ¶¶ 20, 33, 48.) One of the "Plaintiffs" they name, Stefanie Parrish, is not a Plaintiff in this case. (Resp. at 34 n. 16.)

[6] Some were terminated as late as April or May 2022. (Compl. at ¶¶ 14, 36, 48.) One Plaintiff was allegedly terminated November 8, 2023, but that appears to be a typographical error. (*Id.* at ¶ 49.)

ORDER - 3

### A. Legal Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 677-78. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) that he or she suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he or she was legally required to do that caused the deprivation complained of. *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

"The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Vicarious liability may not be imposed on a supervisory employee for the acts of their subordinates in an action brought under § 1983. *Lemire v. California Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). A supervisor may, however, be held liable under § 1983 "if he or she was

personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001).

### B. Abandoned Causes of Action

Plaintiffs initially asserted sixteen causes of action based on the Washington Constitution, Washington state law, and the U.S. Constitution and federal law pursuant to 42 U.S.C. § 1983. (Compl. at ¶¶ 497-708.) In their opposition, Plaintiffs concede their Washington Constitution claims fail. (Resp. at 13 n.9.) Accordingly, Counts II and X are dismissed with prejudice and Counts III and IV are dismissed with prejudice to the extent they assert claims under the Washington Constitution. (*See id.* at ¶¶ 527-79, 633-54.)

Plaintiffs further concede that their U.S. "Constitutional claims under § 1983 against the State fail." (Resp. at 13 n.9.) It is unclear if Plaintiffs are abandoning their § 1983 claims against the Individual Defendants in their official capacity as well as against the DOC. Whether Plaintiffs concede the point or not, "State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983." *Arizonans for Off. Eng. v. Ariz.*, 520 U.S. 43, 69 n.24 (1997). Claims for injunctive relief are addressed below.

The following federal causes of action pursuant to § 1983 remain at issue against the Individual Defendants: free exercise (Count I), due process (Count III), equal protection (Count IV), takings (Count V), subjected to investigational drug use (Count XV), and unconstitutional conditions (Count XVI). The following State law claims remain at issue against all Defendants: violation of the WLAD (Counts VI, VII, IX), wrongful termination (Count VIII), arbitrary and capricious action (Count XI), wage theft (Count XII), breach of contract (Count XIII), and a tort claim for religious discrimination in violation of public policy (Count XIV).

### C. Claims for Injunctive Relief

Plaintiffs contend they may sue the DOC and the Individual Defendants in their official and personal capacities to seek reinstatement to their jobs. (Resp. at 13.) State agencies such as the DOC are not proper defendants to § 1983 claims. *See Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) ("States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes are not 'persons' under § 1983." (citation omitted)). Plaintiffs' citation to *Doe v. Lawrence Livermore Nat'l Lab'y* is unavailing, as the Court in that case allowed reinstatement claims against an official, not the State agency. *See* 131 F.3d at 839 (Plaintiff "requests an injunction requiring [Director] Nuckolls to reinstate" him to his position.).

State officers in their official capacities may be sued when a plaintiff "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)).

Plaintiffs contend they may assert claims for the prospective relief of reinstatement, citing *Doe*. (Resp. at 22 (citing 131 F.3d 836 (9th Cir. 1997)). Although reinstatement can be prospective relief, Plaintiffs must also identify an ongoing violation of federal law. As the Ninth Circuit noted in *Doe*, relief pursuant to the "*Ex parte Young* [doctrine] is available where 'a plaintiff alleges an ongoing violation of federal law, and where the relief sought is prospective rather than retrospective.'" *Doe*, 131 F.3d at 839 (quoting *Coeur d'Alene*, 521 U.S. at 294); *see Ex parte Young*, 209 U.S. 123 (1908). The Court in *Doe* primarily addressed the prospective relief prong, holding that reinstatement is prospective. *Id.* at 840-42. The Court briefly noted that

the ongoing violation prong was met because the plaintiff had "alleged an ongoing policy and the likelihood of future enforcement." *Id.* at 841.

Here, the Proclamation has been rescinded and any DOC policy dependent on it is thus no longer in effect. Plaintiffs make no factual allegations of ongoing violations. State officials may only be subject to claims for prospective injunctive relief where there is an "ongoing violation of federal law to enjoin." *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022); *see also Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (allowing suit for injunction that would "serve the purpose of preventing present and future harm" to plaintiff). Here, in the absence of any ongoing violation of federal law to enjoin, no injunctive relief is available. Accordingly, Plaintiffs' § 1983 claims against the DOC and against the Individual Defendants in their official capacities are dismissed with prejudice.

**D.  Federal Claims**

As currently pled, Plaintiffs fail to state a claim for relief under § 1983. Plaintiffs fail to identify how each Defendant personally participated in violating each Plaintiff's rights for each cause of action.

*1.  Free Exercise Claims*

Plaintiffs assert free exercise claims against the Individual Defendants in their personal capacity. A plaintiff asserting a free exercise claim must show that the government action in question "substantially burdens [the] practice of [his] religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to

ORDER - 7

violate his beliefs." *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013) (quoting *Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006)).

  First, the four Plaintiffs who never requested a religious exemption fail to state a free exercise claim. (*See* Compl. at ¶¶ 12, 14, 22, 41.) Moreover, even for Plaintiffs who did claim religious exemptions, there are no allegations as to what religious practice is at issue and how it is burdened.[7] Finally, there are no allegations that Ms. Strange or Mr. Dowler personally participated in substantially burdening the practice of their religion(s). Plaintiffs argue the Court should make a "natural inference that . . . any new policy about investigating exemption requests had to be approved by the HR Director and the Secretary[.]" (Resp. at 20.) Plaintiffs fail to identify any specific policy that Ms. Strange or Mr. Dowler approved. They argue that "under [Ms. Strange] and [Mr. Dowler's] leadership, DOC 'approved' exemptions but denied all accommodation, without discussion or serious consideration." (Resp. at 21.) Supervisors are not vicariously liable under § 1983 for actions taken under their leadership in the absence of personal participation. *See Lemire*, 726 F.3d at 1074. Plaintiffs' speculation as to a policy approved by Ms. Strange, Mr. Dowler, or both, is the type of "naked assertion . . . devoid of further factual enhancement" that is insufficient to defeat a motion to dismiss. *Iqbal*, 556 U.S. at 678.

  Plaintiffs' free exercise claims rest on Defendants' alleged failure to engage in the interactive process to determine whether they would be provided accommodations. (Compl. at

---

[7] Plaintiffs submitted supplemental authority from the Tenth Circuit, arguing "that Court . . . disagrees with Defendants' contention that Plaintiffs had to provide a detailed explanation of their religious beliefs[.]" (Dkt. # 26 at 2.) The facts in the Tenth Circuit case differ dramatically from the facts here. The employer in that case would "only accept requests for religious exemption that cite to the official doctrine of an organized religion . . . as announced by the leaders of that religion." *Does 1-11 v. Bd. of Regents of Univ. of Colorado*, — F.4th —, 2024 WL 2012317, at *13 (10th Cir. May 7, 2024). The employer admitted they would approve exemptions for adherents of certain religions, such as Jehovah's Witnesses, but not others, such as Roman Catholics. *Id.* While Plaintiffs here need not provide detailed explanations of their religious beliefs or cite official doctrine, they must at a minimum identify the practice that is allegedly burdened.

¶¶ 112 n.8, 124.) Plaintiffs acknowledged at oral argument that denial of accommodation itself is not a violation of their free exercise right, or any other right. (Dkt. # 25 at 19:8-9 (Even when granted an exemption, "we're not arguing that these plaintiffs are entitled to a *per se* accommodation.").) Plaintiffs offer no authority for their theory of a right, under the free exercise clause, to an interactive process, nor do they explain how the lack of an interactive process burdens the practice of their religion. Plaintiffs have not pled a plausible theory for their free exercise claims, and thus these claims are dismissed without prejudice.

        2.        *Equal Protection Claims*

Plaintiffs also assert equal protection claims against the Individual Defendants in their personal capacity. "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). Plaintiffs claim equal protection violations against a "suspect class [of] religious objectors." (Resp. at 29.) But, as Plaintiffs acknowledge, not all Plaintiffs belong in such a class. (Resp. at 29 n.12; *see* Compl. at ¶¶ 12, 14, 22, 41.) Moreover, Plaintiffs do not allege personal participation by the Individual Defendants in violating their equal protection rights. Plaintiffs' claims fail because they have not clearly identified what actions by which Defendants violated which Plaintiff's rights.

The equal protection claims are also deficient because Plaintiffs do not clearly allege discriminatory intent. Plaintiffs ask the Court to make the "inference that the true motivation for the termination of [some Plaintiffs] was not to control the virus, but to dispense with adherents to an unpopular religious position." (Resp. at 29.) Plaintiffs allege no facts linking the Individual

ORDER - 9

Defendants to the motivation they refer to. In fact, Plaintiffs' allegations that Mr. Dowler repeatedly stated "no unvaccinated will be allowed on site" tend to indicate a distinction based on vaccination status, not religious objection. (*See, e.g.*, Compl. at ¶ 141.) Plaintiffs' equal protection claims are therefore dismissed without prejudice.

### 3. Due Process Claims

Similarly, with respect to Plaintiffs' due process claims, they fail to explain each Individual Defendant's personal participation in depriving each Plaintiff of due process. There are no allegations of Ms. Strange's personal participation and only minimal, contradictory allegations regarding Mr. Dowler. While a few Plaintiffs are alleged to have met with Mr. Dowler, most do not appear to have interacted with him at all. (*See, e.g.*, Compl. at ¶¶ 36, 46, 52, 56, 180, 222, 223, 306.) Plaintiffs allege that, on October 1, 2021, Mr. Dowler emailed "all DOC staff who requested an exemption" stating "a final determination had been made that all religious accommodations would be denied[.]" (*Id.* at ¶¶ 237-38.) However, Plaintiffs also allege that 150 employees with religious exemptions were provided accommodations. (*Id.* at ¶ 260.) Plaintiffs do not explain this apparent inconsistency. In addition, the alleged email cannot show Mr. Dowler violated the due process rights of Plaintiffs who sought only medical exemptions.

Plaintiffs fail to identify an interest protected by due process. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (internal alterations and citation omitted). Plaintiffs concede they do not have a right to accommodation. (Dkt. # 25 at 19:6-17.) The Proclamation made clear that in the absence of an accommodation, a worker was prohibited from "engaging in work for a State Agency" unless vaccinated. (Compl., Ex. B at 5-6.)

ORDER - 10

The parties do not dispute that the Proclamation itself meets constitutional due process standards for employees claiming religious or medical exemptions. (*See* Resp. at 25.) *See Pilz v. Inslee*, 2022 WL 1719172, at *7 (W.D. Wash. May 27, 2022), *aff'd*, 2023 WL 8866565 (9th Cir. Dec. 22, 2023) ("the question before the Court is whether the Proclamation provides that required process, and the Court has found that it does."); *see also Gray v. Wash. State Dep't of Transp.*, 2023 WL 6622232, at *5 (W.D. Wash. Oct. 11, 2023) (Rejecting a facial or as-applied challenge because "the Proclamation . . . provided all the procedural due process due to state employees.").

Plaintiffs allege they were not provided the opportunity to be heard that was mandated by the Proclamation. (Resp. at 25-26.) The Proclamation has the force of a statute, as the governor is authorized to issue proclamations protecting public health during a state of emergency. RCW 43.06.220(1)(h). But Plaintiffs have not identified how such an alleged statutory violation could rise to the level of a constitutional violation; the fact that one set of procedures satisfies due process does not mean that every variation from those procedures does not. Plaintiffs' due process claims are therefore dismissed without prejudice.

### 4. Takings Clause Claims

Plaintiffs' takings clause claims cannot be maintained against the Individual Defendants in their personal capacities. "[T]akings actions sound against governmental entities rather than individual state employees in their individual capacities[.]" *Langdon v. Swain*, 29 F. App'x 171, 172 (4th Cir. 2002) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 687 (1978) ("[I]t beggars reason to suppose that Congress would have exempted municipalities from suit, insisting instead that compensation for a taking come from an officer in his individual capacity rather than from the government unit that had the benefit of the property taken.")).

ORDER - 11

Plaintiffs appear to concede the takings claims fail. (*See* Resp. at 30.) Count V is dismissed with prejudice.

### 5. Unconstitutional Conditions Claims

Plaintiffs fail to state claims of unconstitutional conditions. "[T]he unconstitutional conditions doctrine . . . vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013). Plaintiffs argue "Defendants imposed unconstitutional conditions when they refused to apply [the Proclamation] in a constitutional manner." (Resp. at 32.) While Plaintiffs have not expressly identified any enumerated right that was burdened, they cite the "blanket denial" of accommodation and lack of meaningful opportunity to be heard, which appears to relate to their due process claims. (*Id.* at 33.) Just as Plaintiffs have failed to state due process claims, their unconstitutional conditions claim suffers from the same defects. Plaintiffs do not allege any facts showing the Individual Defendants personally participated in coercing them to give up their due process rights. The unconstitutional conditions claims are dismissed without prejudice.

### 6. Investigational Drug Use Claims

Plaintiffs' allegations fail to show they were subjected to any kind of "investigational" drug use. Plaintiffs argue COVID-19 vaccines are "investigational drugs" that Defendants "administered . . . to employees in DOC facilities." (Resp. at 33.) Plaintiffs do not allege any vaccines were administered to them, however. Because it is undisputed that Plaintiffs rejected the vaccine, Plaintiffs cannot claim they were unlawfully "subjected" to any investigational medical product or procedure. As such, the alleged facts do not indicate that Defendants' conduct violated any constitutional or statutory right.

Plaintiffs argue they have stated a claim based on 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III), which requires the Secretary to "ensure that individuals to whom the product is administered are informed . . . of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks." (*See* Compl. at ¶ 699.) Plaintiffs do not argue that Defendants violated this provision, but argue "that Defendants provided experimental vaccinations to its employees without informed consent." (Resp. at 33 (citing Compl. at ¶ 701).) There is no allegation that any Plaintiff was administered the vaccine. The statute is inapplicable because Plaintiffs are not "individuals to whom the product is administered[.]" 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III). Plaintiffs' investigational drug use claims (Count XV) are dismissed with prejudice. *See also Roberts v. Inslee*, 2024 WL 1160895, at *4 (E.D. Wash. Mar. 18, 2024) (rejecting investigational drug claims based on 45 C.F.R. Part 46, the Belmont Report, 21 U.S.C. § 360bbb-3, Article VII of the ICCPR Treaty, Federal Wide Assurance, 10 U.S.C. § 980, EUA Scope of Authorization letters, and the Fourteenth Amendment).

### 7. Qualified Immunity

Defendants contend Plaintiffs' § 1983 claims should be dismissed based on qualified immunity. The Court declines to reach the issue of qualified immunity at this time because Plaintiffs' claims are insufficiently defined. It is difficult to discern whether Defendants' conduct violated clearly established law when it is unclear what conduct Plaintiffs allege Defendants engaged in.

### E. State Law Claims

Plaintiffs have failed to state any federal claims. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the State law claims and dismisses

ORDER - 13

them without prejudice. However, Plaintiffs should have the opportunity to file an amended complaint to cure identified deficiencies, if possible, as discussed above. The Court may then reconsider whether supplemental jurisdiction over Plaintiffs' state law claims is appropriate.

## IV.     CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' Motion (dkt. # 17).

(1)     Counts II, V, X, and XV are dismissed with prejudice.

(2)     Counts III and IV are dismissed with prejudice to the extent they assert claims under the Washington Constitution.

(3)     Counts I, III, IV, and XVI against DOC and against the Individual Defendants in their official capacities are dismissed with prejudice.

(4)     The remaining causes of action are dismissed without prejudice.

(5)     Plaintiffs are granted leave to file an amended complaint addressing the identified deficiencies by **June 17, 2024**. Any amended complaint must, with respect to each plaintiff's claims, clearly identify the defendant(s), the constitutional claim(s) asserted, the specific facts which plaintiff believes support each claim, and the specific relief requested.

(6)     Defendants may file a renewed motion to dismiss within **twenty-one (21) days** of the filing of the amended complaint.

Dated this 16th day of May, 2024.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 14